**Julie MILLS and MultiMortgage Bancorp, Inc., Appellants,**

v.

**Mittie Louise HAGGARD, et al., Appellees.**

**No. 10–00–122–CV.**

Court of Appeals of Texas, Waco.

July 5, 2001.

Lester R. Buzbee, III, Humble, for appellants.

Barbara Moe, Moe & York, Terry Jacobson, Ron Edmondson, Jacobson & Edmondson, P.C., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

The trial court's judgment invalidated a foreclosure sale. The holder of the note for a home improvement loan wants us to reverse the trial court. We decline to disturb the trial court's judgment.

### FACTUAL BACKGROUND

Over 15 years ago James H. Haggard and his wife, Louise Haggard, signed a note for a home improvement loan. Payment of the note was secured by a lien on their home. James died in 1991. The note was "reinstated and modified" by Louise to reduce her payments shortly after James died. Louise did not pay every note payment at the time it was due. A series of different entities became the holder of the note over the next several years. Efforts to collect the note were made by each of the series of subsequent holders of the note and collection agencies acting as agents for the various holders of the note.

By 1997 the holder of the note had been notified of the death of James and the existence of descendants. In particular this was accomplished by a 1993 letter from James's son notifying the holder that due to the death of his father, his mother was having trouble making the note payments and asking for a lower monthly payment.

The latest document that could be considered a "notice-to-cure" was mailed, addressed only to Louise, in 1997. The notice-to-cure, which referenced the original note signed by James and Louise, was not addressed to James. This notice-to-cure was mailed to post office box 324. Louise's address had changed to post office box 31.

Five days after the notice-to-cure was mailed, a notice-of-assignment, assigning the note to the same company that had just sent the notice-to-cure, and a collection letter was mailed to Louise at her current address. Second and third collection letters from this newest holder were also sent to the proper address in roughly 30 day intervals. The note was then assigned to either MultiMortgage Bancorp., Inc. or James C. Mills, the president of MultiMortgage. On October 10, 1997, another collection letter was mailed to Louise at the proper address with an unsigned copy of a Notice of Substitute Trustee's Sale dated October 9, 1997.[1] The certified mail copy of this letter was returned to the sender.

A foreclosure was conducted on November 4, 1997. The property was purchased by MultiMortgage for $3,000 at the foreclosure sale. The property had a fair market value on the date of foreclosure of at least $59,000. A notice to vacate the premises by November 10, 1997, signed by James C. Mills was mailed to Louise the day after the foreclosure.

### PROCEDURAL BACKGROUND

Louise and her three children, the children being the heirs at law of James Haggard, brought suit to set aside the trustee's deed and to enjoin MultiMortgage from taking possession of the property. MultiMortgage responded that the foreclosure was valid in all respects and that it

---

1. The issue of whether a notice-of-foreclosure sent to the debtor must be a signed copy has not been presented to us by the parties. Accordingly, we do not decide that issue.

was entitled to immediate possession of the property. The trial court acted as fact-finder. The trial court determined that the foreclosure was defective and set aside the trustee's deed of foreclosure. Additionally, to protect MultiMortgage, the trial court ordered sufficient money to pay the note to be paid into the registry of the court. Findings of fact and conclusions of law were filed by the trial court at the request of MultiMortgage.

## ISSUES ON APPEAL

MultiMortgage asks that we determine: 1) did the Court err in ruling that the foreclosure of November 4, 1997, was wrong; 2) did the Court err in canceling and rescinding the Trustee's Deed; and 3) did the Court err in awarding fee simple title to the plaintiffs. MultiMortgage recognizes that its second and third issues are necessarily dependent on a determination that the foreclosure was not "wrong."

It is unclear exactly what error MultiMortgage is alleging the trial court committed. Although the trial court filed findings of fact and conclusions of law, MultiMortgage does not specifically attack any of the findings. The findings include: 1) that the company servicing the debt as a collection agent for the note holder in 1993 knew Louise's new address as of that date; 2) that the holder of the note prior to MultiMortgage in 1997 also had knowledge of Louise's new address; 3) that the new address was part of the records of the holder of the note; 4) that the notice-to-cure was mailed to the wrong address and not received by Louise; 5) that the market value of the property was $59,000; and 6) that the foreclosure price was $3,000.

## STANDARD OF REVIEW

A trial judge is required to file findings that were made by him in support of his judgment. *Wagner v. Riske*, 142 Tex. 337, 178 S.W.2d 117, 119 (1944). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.); *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 734 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The same standards are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Polland*, 832 S.W.2d at 734. Although a trial court's conclusions of law may not be challenged for factual insufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Id.; Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *see also National Commerce Bank v. Stiehl*, 866 S.W.2d 706, 707 (Tex.App.—Houston [1st Dist.] 1993, no writ).

## APPLICABLE LAW

Section 51.002(b) of the Texas Property Code provides that the holder of a note must serve written notice of the sale by certified mail on each debtor who, according to the records of the holder of the debt, is obligated to pay the debt. TEX. PROP.CODE ANN. § 51.002(b)(3) (Vernon 1995). Further, "[n]otwithstanding any agreement to the contrary, the holder of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." TEX.PROP. CODE ANN. § 51.002(d) (Vernon 1995).

Thus a notice-of-foreclosure on real property used as the debtor's residence is useless to the creditor unless a proper notice-to-cure has been sent pursuant to Section 51.002(d). We have found no authority that has determined the nature of the notice required by Section 51.002(d). The parties have cited none to us. Notice required by section 51.002(d) is obviously a separate notice than that required by Section 51.002(b). The requirements of the notice of foreclosure are set out in great detail in Section 51.002(b). We must decide whether the trial court could properly have determined that the notice-to-cure was defective, thus causing the notice-of-foreclosure to be of no effect.

■ "An execution sale will be set aside upon proof that it was made for a grossly inadequate price and was accompanied by irregularities which tended to contribute to the inadequacy of price." *Collum v. De-Loughter*, 535 S.W.2d 390, 392 (Tex.Civ. App.—Texarkana 1976, writ ref'd n.r.e.) (citations omitted).

### APPLICATION

Although MultiMortgage does not specifically argue that the evidence was legally and factually insufficient to support the trial court's findings, based on its argument under the first assignment of error, that appears to be the basis of its complaint. We have carefully reviewed the evidence summarized above and find the evidence is legally and factually sufficient to support the trial court's findings. Accordingly, this argument is overruled.

2. We have not been presented with the issue of what notice is proper for a notice-to-cure or notice-of-foreclosure in the event that the holder is aware of the death of one of the persons liable on the note. It is sufficient for our purposes to note that no notice was given to James, a personal representative, his estate, his heirs or his descendants. *See Feni-*

■ To the extent that MultiMortgage is arguing that the findings do not support the judgment, we likewise overrule this argument. Based upon the trial court's findings, the failure to send a notice-to-cure to the address in the holder's file is an irregularity and defeats the effect of sending the notice-of-foreclosure. Further, the failure to send any notice-to-cure to James is another irregularity that would justify the trial court's judgment setting aside the foreclosure.[2]

### CONCLUSION

Accordingly, we affirm the trial court's judgment, setting aside the foreclosure sale.

*more v. Gonzales Cnty. Sav. & Loan Ass'n*, 650 S.W.2d 213, 215 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). MultiMortgage has repeatedly mentioned that the heirs had taken no action to appoint a personal representative to administer James's estate. In this situation a creditor has standing to seek appointment. *See* Tex.Prob.Code Ann. § 77(f) (Vernon 1980).