*293
 
 OPINION
 

 By the Court,
 

 Gibbons, C. J.:
 

 In this appeal, we consider whether homeowners must submit to mediation or arbitration, pursuant to NRS 38.310,
 
 [2]
 
 before they initiate a civil action in the district court to release a homeowners’ association assessment lien on their property. Under that statute, the district court must dismiss any dispute arising from the interpretation, application, or enforcement of homeowners’ associations’ covenants, conditions, and restrictions (CC&Rs) if the parties did not first submit the dispute to mediation or arbitration. However, this statutory requirement does not apply to actions for injunctive relief involving “an immediate threat of irreparable harm, or action[s] relating to the title to residential property.”
 
 [3]
 
 Thus, here, we must determine whether an action seeking the removal of a homeowners’ association lien and an injunction against future liens necessarily involves an immediate threat of irreparable harm or relates to residential title.
 

 On these issues of first impression, we conclude that the filing of a lien, in and of itself, does not create “an immediate threat of irreparable harm”
 
 [4]
 
 and that an action to release a lien, without more, does not “relat[e] to the title to residential property.”
 
 [5]
 
 Accordingly, as neither of these exceptions was shown in this case, the district court correctly concluded that the homeowners were required to submit their claims to mediation or arbitration before instituting an action in the district court to release a lien.
 

 We also consider whether NRS 38.310 applies to actions against a collection agency that acts as a homeowners’ association’s agent. We conclude that if the collection agency acts as the agent of a homeowners’ association and NRS 38.310 applies to the action against the homeowners’ association, then that statute applies equally to the collection agency. Accordingly, here, since the homeowners did not first submit their claims against the homeowners’ association and the collection agency to mediation or arbitration as required by NRS 38.310, the district court properly dismissed their complaint.
 

 FACTS AND PROCEDURAL HISTORY
 

 In 2004, appellants Michael and Cara Hamm purchased a home and an adjoining vacant lot in the Arrowcreek subdivision, a
 
 *294
 
 planned community in Reno, Nevada.
 
 [6]
 
 Thereafter, Mr. and Mrs. Hamm transferred the properties to appellant the 2005 Hamm Family Trust, which currently owns them. According to Mr. and Mrs. Hamm, when they purchased the properties, they were told that they would not be required to pay homeowner assessment fees on the vacant lot, pursuant to Arrowcreek’s CC&Rs.
 

 However, due to Mr. and Mrs. Hamm’s failure to pay assessment fees on the vacant lot, respondent Arrowcreek Homeowners’ Association (Arrowcreek HOA) sent them a notice assessing a late fee and interest. Mr. and Mrs. Hamm responded to the notice by asking Arrowcreek HOA to execute a “no-fee” agreement with them similar to one that it had purportedly previously executed with other homeowners. This request was denied. Mr. and Mrs. Hamm apparently did not pay the assessed amount, late fee, or interest. As a result, in November 2005, respondent Nevada Association Services, Inc. (NAS), a collection agency, notified Mr. and Mrs. Hamm that they were required to pay Arrowcreek HOA the amount due within ten days to prevent the recording of a notice of delinquent assessment lien. Although Mr. and Mrs. Hamm immediately notified NAS that the assessment was disputed, NAS, at the direction of Arrowcreek HOA, filed a notice of delinquent assessment lien with the county recorder.
 

 Shortly thereafter, Mr. and Mrs. Hamm and the 2005 Hamm Family Trust (collectively, the Hamms) filed a district court complaint against Arrowcreek HOA and NAS (collectively, Arrow-creek). In their complaint, the Hamms sought (1) a declaratory judgment interpreting the CC&Rs in a manner that eliminated any assessment fees on the vacant lot; (2) release of the lien; (3) a permanent injunction against further assessments and liens with respect to the vacant lot; (4) breach of contract damages, including attorney fees; (5) slander of title damages, including punitive damages for allegedly filing the lien in bad faith; and (6) special damages, including attorney fees and costs. The Hamms alleged that Arrowcreek’s actions clouded title to their properties and harmed their “creditworthiness.”
 

 Arrowcreek HOA moved to dismiss the complaint, under NRCP 12(b)(5), based on the Hamms’ failure to state a claim upon which relief could be granted, and for their failure to comply with NRS 38.310, which provides that parties must submit claims relating to the interpretation and application of CC&Rs to mediation or arbitration before seeking relief in the district court. Alternatively, Arrowcreek HOA moved to compel mediation or arbitration pursuant to NRS 38.310. NAS joined Arrowcreek HOA’s motion.
 

 After considering the motion and the Hamms’ opposition thereto, the district court concluded that the Hamms’ complaint called for the interpretation and enforcement of CC&Rs and,
 
 *295
 
 consequently, dismissed the complaint. In its order, the district court stated that once arbitration was concluded, the Hamms could, if necessary, seek relief from the lien in the district court. The Hamms appeal the district court’s order dismissing their complaint.
 

 DISCUSSION
 

 This court reviews the district court’s statutory interpretations de novo.
 
 [7]
 
 Generally, when this court interprets a statute, if “the language ... is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.’ ’
 
 [8]
 

 The statute at issue here, NRS 38.310(1), provides that “[n]o civil action based upon a claim relating to . . . [t]he interpretation, application or enforcement” of CC&Rs may be commenced in state court, “unless the action has been submitted to mediation or arbitration pursuant to the provisions of NRS 38.300 to 38.360, inclusive.”
 
 [9]
 
 If a party institutes a civil action in violation of NRS 38.310(1), the district court must dismiss it pursuant to NRS 38.310(2).
 

 The Hamms contend that this provision does not apply to their action to release the lien because (1) they sought not to interpret the CC&Rs but merely to enforce a prior interpretation of those CC&Rs; (2) their action was not a “civil action” for NRS 38.310 purposes; and (3) the lien portion of their claims that was directed at NAS, which is not a homeowners’ association, was not subject to NRS 38.310. The Hamms further contend that NRS 38.310 is unconstitutional because (1) it infringes on the right to a jury trial by requiring mediation or arbitration; and (2) it violates equal protection principles because a homeowners’ association may record a lien without submitting to mediation or arbitration, but homeowners must submit to mediation or arbitration before initiating an action in the district court to have the lien removed. We address each of these arguments in turn.
 

 NRS 38.310’s application to actions seeking the “interpretation, application or enforcement’’ of CC&Rs
 

 With respect to the Hamms’ argument that they did not seek the CC&Rs’ interpretation, the Hamms’ complaint explicitly stated
 
 *296
 
 that the Hamms sought “court intervention to interpret the language ... of the Arrowcreek [HOA] CC&R’s.” Further, as the district court found, resolving the merits of the Hamms’ complaint would require the district court to interpret the CC&Rs’ meaning to determine whether, under that meaning, Arrowcreek HOA’s assessment was proper. Moreover, NRS 38.310 also prohibits civil actions related to the enforcement of CC&Rs without first submitting the claims to mediation or arbitration. Accordingly, so long as the Hamms’ action constitutes a “civil action” for NRS 38.310 purposes, and NRS 38.310 applies to NAS, the Hamms must submit their claims to arbitration or mediation before instituting an action in the district court.
 

 The definition of “civil action” for NRS 38.310purposes
 

 For NRS 38.310 purposes, a “civil action” is defined as “includfing] an action for money damages or equitable relief.”
 
 [10]
 
 However, this definition excludes “an action in equity for injunctive relief in which there is an immediate threat of irreparable harm.”
 
 [11]
 
 This definition also excludes actions “relating to the title to residential property.”
 
 [12]
 

 Based on these exclusions, the Hamms contend that the district court matter, in which they sought to remove the lien, was not a “civil action” under NRS Chapter 38 because the lien created an “immediate threat of irreparable harm” by clouding their title and putting Arrowcreek in the position to foreclose on their property. They also contend that the matter was not a “civil action” because it was related to residential title. These arguments are addressed in turn.
 

 Exception to the definition of “civil action”: “immediate threat of irreparable harm”
 

 This court has not previously addressed whether a lien on real property creates immediate and irreparable harm. “[A] lien is a security device that binds property to a debt and puts a party on notice that someone besides the owner of the property has an interest in that property.”
 
 [13]
 
 Further, this court has noted that a lien on
 
 *297
 
 property clouds that property’s title.
 
 [14]
 
 However, whether the mere existence of a lien creates an immediate threat of irreparable harm depends on the meanings of “immediate” and “irreparable.”
 

 Courts often use the terms “immediate” and “irreparable” in the context of determining whether to grant injunctive relief.
 
 [15]
 
 The common understanding of “immediate” is “instant or direct.”
 
 [16]
 
 Generally, harm is “irreparable” if it cannot adequately be remedied by compensatory damages.
 
 [17]
 
 Although this court has concluded that a
 
 foreclosure
 
 may result in irreparable harm “[bjecause real property and its attributes are considered unique,”
 
 [18]
 
 a lien is merely a preliminary step to foreclosure and does not itself instantly implicate the loss of unique real property.
 

 In the injunction context, the Pennsylvania Commonwealth Court has recognized that, “[i]n special circumstances, a court conceivably could find that a property owner would be irreparably harmed because of the existence of [a] lien.”
 
 [19]
 
 Nonetheless, the Pennsylvania court concluded that the property owners must allege and prove an irreparable harm “apart from the existence of the liens themselves”
 
 [20]
 
 because liens usually may be removed by paying money or posting security, which would result in harm only to the extent of a temporary loss of any amount that is ultimately not owed.
 
 [21]
 
 Accordingly, the court concluded that an injunction was improper as the property owners there had failed to show that irreparable harm would occur as a result of the existence of the liens while they pursued means to remove the liens.
 
 [22]
 
 We find the Penn
 
 *298
 
 sylvania Commonwealth Court’s reasoning persuasive. Therefore, we conclude that the filing of a lien, in and of itself, does not effect an immediate threat of irreparable harm.
 

 In this case, the Hamms did not allege or prove irreparable harm. Instead, they asserted in their complaint that the lien clouded their title and harmed their perceived “creditworthiness.” Further, Arrowcreek HOA had not yet instituted foreclosure proceedings.
 
 [23]
 
 Accordingly, as the Hamms did not provide proof that they would have been unable to pay the lien prior to the institution of foreclosure proceedings or were otherwise injured in a manner that could not be remedied, the district court did not err in concluding that the Hamms’ action fell within the scope of NRS 38.310.
 

 Exception to the definition of “civil action”: “an action relating to the title to residential property”
 

 For the purpose of NRS 38.310, this court has not previously addressed whether an action to release a lien constitutes an “action relating to the title to residential property.”
 
 [24]
 
 As noted above, a lien is a monetary encumbrance on property,
 
 [25]
 
 which clouds title.
 
 [26]
 
 We now take this opportunity to clarify that, while a lien clouds title, it exists separately from that title, and therefore, an action simply to remove the lien does not “relate to” residential title so as to fall outside the scope of NRS 38.310.
 

 Real property implicates a broad range of potential rights, including “all rights inherent in ownership, including the right to possess, use, and enjoy the property,’ ’
 
 [27]
 
 as well as security in and title to the property.
 
 [28]
 
 While a lien creates a security interest in property, “[a] lien right alone does not give the lienholder right and title to property.”
 
 [29]
 
 Instead, title, which “constitutes] the legal right to control and dispose of property,”
 
 [30]
 
 remains with the
 
 *299
 
 property owner until the lien is enforced through foreclosure proceedings. Before that time, the lien merely gives its holder priority to the property and security for compensation.
 
 [31]
 
 Therefore, while a lienholder possesses a property right,
 
 [32]
 
 and even though a lien clouds the property’s title,
 
 [33]
 
 an action to remove the lien does not, in and of itself, “relate to” the owner’s title so as to come outside the definition of “civil action” for NRS 38.310 purposes.
 

 In this case, Arrowcreek recorded a lien against the Hamms’ property, but it did not initiate proceedings to foreclose upon the lien. The filing of the lien created a monetary encumbrance that did not alter the Hamms’ title to the property. Accordingly, we conclude that the Hamms’ action to release the lien did not “relat[e] to the title to residential property.”
 
 [34]
 

 We further conclude that NRS 38.310 expresses Nevada’s public policy favoring arbitration of disputes involving the interpretation and enforcement of CC&Rs. Accordingly, because the Hamms’ action to release the lien on their property did not allege an immediate threat of irreparable harm or relate to residential title, it constituted a civil action subject to NRS 38.310’s mediation or arbitration prerequisite.
 

 Application of NRS 38.310 to an action against a collection agency working as an agent for a homeowners’ association
 

 The Hamms argue that NRS 38.310 does not apply to their claim against NAS because NAS is a collection agency, not an “association.” NAS argued below that it was Arrowcreek HOA’s agent and therefore subject to the same statutory prerequisites as Arrowcreek HOA.
 

 An agency relationship results when one person possesses the contractual right to control another’s manner of performing the duties for which he or she was hired.
 
 [35]
 
 The party asserting the agency relationship has the burden of proving the relationship by a preponderance of the evidence.
 
 [36]
 
 While this court has not previously addressed whether collection agencies act as agents when collecting debts for homeowners’ associations, the Texas Court of Appeals has concluded that collection agencies attempting to collect
 
 *300
 
 on a promissory note secured by a lien “act[ ] as agents for the various holders of the note.”
 
 [37]
 

 We conclude that an agency relationship existed here because Arrowcreek HOA hired NAS to collect the Hamms’ alleged assessments and possessed the contractual right to direct NAS to record the lien on Arrowcreek HOA’s behalf. As the Hamms’ claims against NAS arose from actions performed as Arrowcreek HOA’s agent, NRS 38.310 applies to their claims against NAS just as it applies to their claims against Arrowcreek HOA. As we conclude that the district court properly dismissed the Hamms’ action against Arrowcreek HOA under NRS 38.310, we also conclude that the district court properly dismissed the Hamms’ action against NAS under that statute.
 

 Constitutionality of NRS 38.310
 

 The Hamms argue that NRS 38.310 violates their constitutional rights to a jury trial and equal protection under the law. While the Hamms failed to raise their constitutionality arguments below, we choose to analyze them sua sponte for plain error.
 
 [38]
 

 NRS 38.310 and the constitutional right to a jury trial
 

 Article 1, Section 3 of the Nevada Constitution provides: “The right of trial by Jury shall be secured to all and remain inviolate forever; but a Jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law . . . .” NRS 38.310 does not require binding arbitration. Instead, it requires that the parties submit to mediation, nonbinding arbitration, or binding arbitration before they initiate a civil action.
 
 [39]
 
 If the parties agree to nonbinding arbitration, “any party to the arbitration may, within 30 days after a decision and award have been served upon the parties, commence a civil action in the proper court concerning the claim which was submitted for arbitration.”
 
 [40]
 
 Even if the parties agree to binding arbitration, the arbitration award may be vacated and a rehearing granted pursuant to NRS 38.241.
 
 [41]
 

 In this case, the Hamms and Arrowcreek could select mediation or arbitration pursuant to the provisions of NRS 38.330 noted above. As the Hamms had adequate legal remedies available to them upon the conclusion of either nonbinding or binding arbitra
 
 *301
 
 tion, we conclude that NRS 38.310 does not violate the constitutional right to a jury trial.
 

 NRS 38.310 and the constitutional right to equal protection
 

 The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees equal protection under the law. The first step in the equal protection analysis is to determine the appropriate standard of scrutiny to apply according to the rights infringed and the classification created.
 
 [42]
 
 If fundamental rights are not infringed or a suspect class is not involved, the statute “will survive an equal protection attack so long as the classification withstands ‘minimum scrutiny,’
 
 i.e.,
 
 is rationally related to a legitimate governmental purpose.’
 
 [43]
 
 In this case, as no fundamental rights are involved, we apply the rational basis test to assess the constitutionality of NRS 38.310.
 
 [44]
 

 NRS 116.3116(1) provides that liens exist when assessments are due, regardless of any classification. Thus, an association is not required to commence a civil action to record or perfect the lien, which already exists once assessments are due, and, therefore, such association need not submit to mediation or arbitration before recording the lien. We conclude that NRS 38.310 does not treat similarly situated individuals differently because it requires mediation or arbitration before civil actions are initiated by homeowners or homeowners’ associations alike, without classification. Applying the rational basis test, we conclude that NRS 38.310’s requirement of mediation or arbitration is rationally related to the legitimate governmental interest of assisting homeowners to achieve a quicker and less costly resolution of their disputes with homeowners’ associations than if they had to initiate a civil action in the district court. Accordingly, we conclude that NRS 38.310 does not violate equal protection principles.
 

 CONCLUSION
 

 If parties dispute the interpretation and enforcement of CC&Rs, they must first submit to mediation or arbitration, unless a party seeks injunctive relief from a threat of immediate and irreparable harm or the action relates to residential title.
 
 [45]
 
 As an action to remove a lien, without more, neither involves an immediate threat of
 
 *302
 
 irreparable harm nor relates to title to residential property, we conclude that parties must submit such an action to mediation or arbitration pursuant to NRS 38.310 before seeking relief in the district court. Therefore, in this case, the district court properly dismissed the Hamms’ action against Arrowcreek HOA because they had not submitted to mediation or arbitration.
 

 Further, when a homeowners’ association employs a collection agency to record a lien, the collection agency is usually acting as its agent. As such, any “civil actions” brought against the collection agency must be submitted to mediation or arbitration along with any corresponding claims against the homeowners’ association. Therefore, here, the district court properly dismissed the Hamms’ action against NAS, which acted as Arrowcreek HOA’s agent. Finally, we conclude that NRS 38.310 does not violate the constitutional rights to a jury trial and equal protection under the law. Accordingly, we affirm the district court’s order dismissing the Hamms’ action pursuant to NRS 38.310(2).
 
 [46]
 

 Hardesty, Parraguirre, Douglas, Cherry and Saitta, JJ., and Rose, Sr. J., concur.
 

 [2]
 

 We note that the version of NRS 38.310 applicable to this case was effective through December 31, 2007. The amended version now includes real estate within condominium hotels.
 

 [3]
 

 NRS 38.300(3) (amended effective January 1, 2008).
 

 [4]
 

 Id.
 

 [5]
 

 Id.
 

 [6]
 

 See
 
 NRS 116.075.
 

 [7]
 

 Keife
 
 v.
 
 Logan,
 
 119 Nev. 372, 374, 75 P.3d 357, 359 (2003).
 

 [8]
 

 State v. Jepsen,
 
 46 Nev. 193, 196, 209 P. 501, 502 (1922).
 

 [9]
 

 See also
 
 NRS 116.4117(2) (requiring that parties comply with NRS 38.310 before suing for damages on claims arising from a failure or refusal to comply with homeowners’ association documents).
 

 [10]
 

 NRS 38.300(3).
 

 [11]
 

 Id.
 

 [12]
 

 Id.
 

 [13]
 

 State, Dep’t Human Res. v. Estate of Ullmer,
 
 120 Nev. 108, 117, 87 P.3d 1045, 1051 (2004) (explaining that a lien “is ‘a claim, encumbrance, or charge on property for the payment of some debt, obligation or duty’ ” (quoting
 
 Black’s Law Dictionaiy
 
 922 (6th ed. 1990))).
 

 [14]
 

 See In re Contrevo,
 
 123 Nev. 20, 24, 153 P.3d 652, 655 (2007) (“Permitting creditors to attach judgment liens to exempt homestead property would allow them to cloud the title to property that they have no legal right to execute against.”);
 
 O’Dell v. Martin,
 
 101 Nev. 142, 143, 696 P.2d 996, 997 (1985) (explaining that federal tax liens recorded against the appellant’s property clouded title to that property).
 

 [15]
 

 See
 
 NRCP 65(b) (permitting temporary restraining orders if specific facts show “immediate and irreparable injury, loss, or damage”);
 
 Dixon v. Thatcher,
 
 103 Nev. 414, 415-16, 742 P.2d 1029, 1029-30 (1987) (concluding that a preliminary injunction to stop a foreclosure is proper where there is a reasonable likelihood of success and a threat of irreparable harm).
 

 [16]
 

 Sam
 
 v.
 
 Com.,
 
 411 S.E.2d 832, 839 (Va. Ct. App. 1991).
 

 [17]
 

 University Sys. v. Nevadans for Sound Gov't,
 
 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).
 

 [18]
 

 Dixon,
 
 103 Nev. at 416, 742 P.2d at 1030.
 

 [19]
 

 LCN Real Estate
 
 v.
 
 Borough of Wyoming,
 
 544 A.2d 1053, 1059 (Pa. Commw. Ct. 1988).
 

 [20]
 

 Id.
 

 [21]
 

 Id.
 
 at 1060.
 

 [22]
 

 Id.
 

 [23]
 

 See
 
 NRS 116.31162(1)(c) (requiring an association to wait 90 days from the recording of the notice of default before instituting foreclosure proceedings).
 

 [24]
 

 NRS 38.300(3).
 

 [25]
 

 State, Dep’t Human Res. v. Estate of Ullmer,
 
 120 Nev. 108, 117, 87 P.3d 1045, 1051 (2004).
 

 [26]
 

 In re Contrevo,
 
 123 Nev. 20, 24, 153 P.3d 652, 655 (2007) (judgment liens);
 
 O’Dell
 
 v.
 
 Martin,
 
 101 Nev. 142, 143, 696 P.2d 996, 997 (1985) (federal tax liens).
 

 [27]
 

 McCarran Int’l Airport v. Sisolak,
 
 122 Nev. 645, 658, 137 P.3d 1110, 1119 (2006).
 

 [28]
 

 In re Marino,
 
 205 B.R. 897, 899 (Bankr. N.D. Ill. 1997).
 

 [29]
 

 Id.
 

 [30]
 

 Black’s Law Dictionary
 
 1522 (8th ed. 2004).
 

 [31]
 

 In
 
 re Marino,
 
 205 B.R. at 899.
 

 [32]
 

 Id.
 

 [33]
 

 In
 
 re Contrevo,
 
 123 Nev. 20, 24, 153 P.3d 652, 655 (2007);
 
 O'Dell v. Martin,
 
 101 Nev. 142, 143, 696 P.2d 996, 997 (1985).
 

 [34]
 

 NRS 38.300(3).
 

 [35]
 

 Grand Hotel Gift Shop v. Granite St. Ins.,
 
 108 Nev. 811, 815, 839 P.2d 599, 602 (1992).
 

 [36]
 

 Trump v. District Court,
 
 109 Nev. 687, 695 n.3, 857 P.2d 740, 745 n.3 (1993).
 

 [37]
 

 Mills v. Haggard,
 
 58 S.W.3d 164, 165 (Tex. App. 2001).
 

 [38]
 

 See Matter of Guardianship of L.S. & H.S.,
 
 120 Nev. 157, 166 n.24, 87 P.3d 521, 526 n.24 (2004) (noting that this court may address constitutional issues
 
 sua sponte
 
 if they were not raised in the district court).
 

 [39]
 

 NRS 38.310(1).
 

 [40]
 

 NRS 38.330(5).
 

 [41]
 

 NRS 38.330(6).
 

 [42]
 

 Arata
 
 v.
 
 Faubion,
 
 123 Nev. 153, 159, 161 P.3d 244, 248 (2007).
 

 [43]
 

 Id.
 

 [44]
 

 See Sawyer v. Dooley,
 
 21 Nev. 390, 394, 32 P. 437, 438 (1893) (applying the rational basis test to a statute involving different treatment of property owners according to the amount of delinquent taxes they owed on their property).
 

 [45]
 

 NRS 38.300(3); NRS 38.310.
 

 [46]
 

 We have considered the parties’ other arguments and conclude that they lack merit. Specifically, the Hamms argue that the district court’s equity jurisdiction requires it to decide their case and that Arrowcreek selected the forum and waived arbitration by recording the lien.