An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

SOUTHERN HIGHLANDS
COMMUNITY ASSOCIATION,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN SCANN,
Respondents,
and
PREM DEFERRED TRUST; ELSINORE,
LLC; MONTESA, LLC; KING FUTTS
PFM, LLC; AND HIGHER GROUND,
LLC, ON BEHALF OF THEMSELVES
AND AS REPRESENTATIVES OF THE
CLASS HEREIN DEFINED,
Real Parties in Interest.

No. 61940

**FILED**

NOV 1 0 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

PREM DEFERRED TRUST, ON
BEHALF OF ITSELF AND AS
REPRESENTATIVES OF THE CLASS
AS HEREIN DEFINED,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN SCANN, DISTRICT JUDGE,
Respondents,
and
SOUTHERN HIGHLANDS
COMMUNITY ASSOCIATION,
Real Party in Interest.

No. 62587

SUPREME COURT
OF
NEVADA

(O) 1947A

14-37024

## ORDER GRANTING IN PART AND DENYING IN PART PETITIONS FOR WRITS OF MANDAMUS OR PROHIBITION

These are consolidated original petitions for writs of mandamus or prohibition challenging district court orders granting and then denying sequential motions to dismiss for failure to comply with NRS 38.310's arbitration requirements in a real property action.

At foreclosure auctions, Prem Deferred Trust and others purchased real property located in the Southern Highlands Community. Afterwards, Southern Highlands Community Association sought to collect from Prem and other purchasers the full amount of past due assessments, together with all accrued interest, fees, and other charges. Prem and the remaining real parties in interest, however, refused to pay, or paid and now seek to recoup, all sums greater than the amount given superpriority status by NRS 116.3116(2).

Prem initially sought, on behalf of itself and others similarly situated, to arbitrate the disputes with Southern Highlands before the Nevada Real Estate Division (NRED) under NRS 38.310. NRS 38.310 requires claims involving the interpretation of homeowners' association covenants, conditions, and restrictions (CC&Rs) to be submitted to NRED for arbitration or mediation before either party may institute a civil action in district court.[1] After refusing to rule on the merits of the claims as they

---

[1]Although the parties do not, in many cases, adequately identify which version of the statutes applies to the different facets of their dispute, the 2009 version of NRS Chapter 38 applies to our consideration herein of whether NRS 38.310 requires arbitration of the claims in the complaint. Accordingly, we refer herein to the 2009 statutes unless otherwise specified.

 

pertained to claimants other than Prem, the arbitrator ruled against Prem. Prem then sued Southern Highlands in district court, seeking to resolve the disputes as a class action.

Southern Highlands filed a motion to dismiss the class allegations and all claims that were not individually submitted to NRED for arbitration or mediation. The district court initially granted Southern Highlands' motion to dismiss the claims that directly involved the CC&Rs, and with leave of the court, Prem ultimately filed a second amended complaint, omitting reference to the CC&Rs. Southern Highlands again moved to dismiss the class allegations against all plaintiffs except for Prem, but the district court denied its motion. Southern Highlands consequently filed the writ petition in Docket No. 61940, seeking a writ of mandamus or prohibition directing the district court to grant its motion to dismiss the second amended complaint because the dispute involved the interpretation of the CC&Rs and thus had to be submitted to NRED for arbitration or mediation first under NRS 38.310. Prem then filed the writ petition in Docket No. 62587 in February 2013, belatedly challenging the district court's February 2012 order dismissing its original complaint nearly one year earlier.

These writ petitions were consolidated and, as requested, answers and replies were filed. Having considered the parties' arguments therein and for the reasons explained below, we grant in part and deny in part Southern Highlands' petition. We refuse to consider the petition filed by Prem.

*Southern Highlands' petition warrants the court's consideration*

Mandamus relief is available to compel an act that is required by law or to control an arbitrary or capricious abuse of discretion. NRS 34.160; *see also Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124

Nev. 193, 197, 179 P.3d 556, 558 (2008).[2] Because a writ petition seeks an "extraordinary remedy, we will exercise our discretion to consider such a petition only when there is no plain, speedy and adequate remedy in the ordinary course of law or there are either urgent circumstances or important legal issues that need clarification in order to promote judicial economy and administration." *Cheung v. Eighth Judicial Dist. Court*, 121 Nev. 867, 869, 124 P.3d 550, 552 (2005) (internal quotations omitted). "[W]hether an appeal is an adequate and speedy remedy necessarily turns on the underlying proceedings' status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented." *Rolf Jensen & Assocs. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 282 P.3d 743, 745-46 (2012) (internal quotations omitted).

As to Prem's petition, the doctrine of laches bars our consideration. Laches precludes review of a writ petition when there is an inexcusable delay in seeking relief, waiver can be implied from the petitioner's knowing acquiescence in existing conditions, and the real party in interest is prejudiced thereby. *Bldg. & Constr. Trades Council of N. Nev. v. State ex rel. Pub. Works Bd.*, 108 Nev. 605, 611, 836 P.2d 633, 637 (1992). By waiting nearly one year after the challenged order was entered, Prem unreasonably delayed filing its writ petition, which concerns a complaint that in the interim was amended twice. Because of

_____

[2]Because mandamus, rather than prohibition, constitutes the proper vehicle to challenge the rulings at issue here, we deny Southern Highlands' alternative request for a writ of prohibition. *See* NRS 34.320 (noting that prohibition relief is available to address proceedings in excess of a tribunal's jurisdiction).

the delay and the current status of the case, we decline to exercise our discretion to review its petition or the merits of the arguments therein.[3] *See State v. Eighth Judicial Dist. Court*, 116 Nev. 127, 134-35, 994 P.2d 692, 697 (2000) (concluding that an eleven-month delay alone precluded consideration of a petition).

Addressing Southern Highlands' writ petition will prevent the district court from adjudicating matters that must first be submitted to an arbitrator or mediator, thereby advancing the interests of judicial economy. *Cheung*, 121 Nev. at 869, 124 P.3d at 552. While we generally review district court orders challenged in a writ petition for an arbitrary or capricious abuse of discretion, we nevertheless review issues of law, including statutory interpretation, de novo, even in the context of a writ petition. *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 558-59.

*Some of the claims in the second amended complaint fall within the scope of NRS 38.310's arbitration and mediation requirement*

Southern Highlands asserts that all of the claims in the second amended complaint must be dismissed under NRS 38.310 to the extent that they are brought by parties who failed to first submit the claims to an arbitrator or mediator, because the claims all involve the

---

[3]As a result, we do not address Prem's argument that NRS 38.310 violates the separation of powers doctrine under the Nevada Constitution. Moreover, we note that in asserting its constitutional argument, Prem and the remaining real parties in interest failed to comply with NRAP 44, which requires a party who asserts a constitutional challenge to a statute in a proceeding before this court in which the state is not a party to give written notice to the clerk of this court, so that the clerk can certify the fact to the attorney general. *See In re Candelaria*, 126 Nev. ___, ___, 245 P.3d 518, 522 (2010) (providing that a failure to comply with NRAP 44 is an independent basis for summarily rejecting a constitutional argument).

interpretation or administration of the CC&Rs and the lien statute, NRS 116.3116(2). Prem and the remaining real parties in interest argue that they complied with NRS 38.310 or are not required to comply. They contend that the principle of vicarious exhaustion excuses those parties who did not arbitrate or mediate their claims because Prem arbitrated on their behalf. Prem and the remaining real parties in interest also argue that requiring numerous parties to submit their claims to an arbitrator or mediator is futile.

While we disagree with Southern Highlands that any interpretation of NRS 116.3116(2) necessarily involves reference to the CC&Rs and arbitration under NRS 38.310, we agree that NRS 38.310 requires the dismissal of some, but not all, of the claims in the second amended complaint. We disagree with Prem and the remaining real parties in interest's contentions that NRS 38.310 was satisfied or that it was futile to adhere to the statute's requirements.

*NRS 38.310 governs disputes requiring interpretation, application, or enforcement of the CC&Rs*

Before instituting a civil action requiring the interpretation, application, or enforcement of CC&Rs, the matter must be submitted to arbitration or mediation before the NRED:

> 1. No *civil action* based upon a claim relating to:
>
> (a) The *interpretation, application or enforcement of any [CC&Rs]* applicable to residential property or any bylaws, rules or regulations adopted by an association; . . .
>
> . . .
>
> may be commenced in any court in this State unless the action has been submitted to mediation

> or arbitration pursuant to the provisions of NRS
> 38.300 to 38.360, inclusive . . . .

NRS 38.310(1) (2009) (amended 2013) (emphases added). Thus, if an action involves ascertaining the meaning of the language in the CC&Rs or "bylaws, rules or regulations," the action is within the scope of NRS 38.310's mediation and arbitration requirement. *See Black's Law Dictionary* 837 (8th ed. 2004) (defining "interpretation" as "the ascertainment of meaning to be given to words"); *see also We The People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1170 (2008) (explaining that this court interprets unambiguous language "in accordance with its plain meaning"). Any action based on such claims that were not arbitrated or mediated must be dismissed: "A court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." NRS 38.310(2) (2009) (amended 2013).

While Southern Highlands asserts that adjudicating the second amended complaint requires looking to the CC&Rs, Prem and the other remaining real parties in interest argue that the district court will look only to Southern Highlands' periodic budget, nothing else, to resolve the claims about Southern Highlands' imposition and collection of assessments. Resolving NRS 38.310's effect on the second amended complaint requires an inquiry into the complaint's substance and the substantive laws relevant to the lien-related allegations and claims asserted. *See Nev. Power Co. v. Eighth Judicial Dist. Court*, 120 Nev. 948, 960, 102 P.3d 578, 586 (2004) (indicating that a complaint is evaluated for its substance).

As noted, the claims here are primarily based on the assertion that Southern Highlands is charging Prem, the remaining real parties in interest, and the other class members with items that they are not

obligated to pay under NRS 116.3116(2).[4] The first subsection of NRS 116.3116 provides associations with a statutory lien upon the property for unpaid assessments and certain penalties, fines, fees, interest, and other charges.[5] NRS 116.3116(1) permits an association's declaration to alter which assessments or other charges may form the basis of the statutory lien. *See also* NRS 116.3102(j)-(n) (2009) (amended 2011). The "'[d]eclaration' means any instruments, however denominated, that create a common-interest community," which may include the CC&Rs. NRS 116.037. Thus, the CC&Rs may establish which assessments and charges an association is authorized to impose and which imposed assessments and charges form the basis of the lien. As a result, where parties dispute the validity of the charges imposed or the lien's amount under NRS 116.3116(1), those questions cannot be resolved without referencing the CC&Rs, the declaration, or other governing documents.

---

[4]To the extent that Prem and the other owners challenge Southern Highlands' ability to impose assessments, fees, or costs, statutes from years prior to 2009 might apply. But the resolution of this writ petition does not require us to examine Southern Highlands' imposition of assessments or other charges. Rather, this writ petition only requires that we ascertain whether Prem is challenging the validity or amount of such charges. Accordingly, we express no opinion regarding the validity or amount of any charges or which version of what statutes might apply to determine the validity or amount of the charges.

[5]Either the 2007 or 2009 version of NRS 116.3116 may apply in the underlying case when considering the amounts of the superpriority lien and its effect upon this litigation. This question, however, is beyond the scope of this writ petition, and we thus decline to address it. The 2009 changes to NRS 116.3116 are immaterial for the purposes of this writ petition, and we thus refer herein to that version of NRS 116.3116.

NRS 116.3116(2)(c) provides that the association's lien has priority over certain other security interests,

> to the extent of the *assessments for common expenses based on the periodic budget* adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien.

(Emphasis added.) Southern Highlands argues that in ascertaining the final amount of the lien under NRS 116.3116(2), the district court ultimately must look to the CC&Rs to determine the nature and extent of the assessments. The district court agreed with Prem and the remaining real parties in interest's contention that the determination of the priority and amount of Southern Highlands' liens, as they relate to the second amended complaint's claims, require reference to the periodic budget and not to the CC&Rs.

Prem and the remaining real parties in interest's contention oversimplifies the relationship between NRS 116.3116(2) and the remainder of the statutory scheme. As discussed above, the CC&Rs may affect the amount of an assessment. To the extent that the priority language defines the amount of the lien entitled to superpriority based on the assessments for common expenses under a periodic budget, the budget is also a matter that the CC&Rs can affect. Although the budget is defined generally by NRS 116.3115 and NRS 116.31151, both statutes provide that the declaration "[may] impose[ ] more stringent standards" for a budget than the statutory standards. NRS 116.3115(1) (2009) (amended 2011); NRS 116.31151(1) (2009). Thus, the CC&Rs can affect the budget and the assessments for common expenses based on the

budget, thereby affecting the amount of the lien entitled to superpriority status under NRS 116.3116(2).

Having concluded that the CC&Rs may affect both the validity and the amount of an association's lien under NRS 116.3116(1) and thus the amount entitled to superpriority under NRS 116.3116(2), we must necessarily conclude that, if a party disputes the association's periodic budget and assessments or the validity or amount of an association's lien, such disputes necessarily involve resort to or interpretation of the association's CC&Rs or other governing documents, which triggers NRS 38.310(1) and requires NRED mediation or arbitration prior to civil litigation. *See Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 296, 183 P.3d 895, 900 (2008) (holding that where the dispute would require the district court to interpret the CC&Rs, the action must first be submitted to NRED mediation and arbitration). But if the party does not dispute the validity or amount of an association's lien or the monthly assessment derived from the association's periodic budget, then no resort to the CC&Rs is necessary and the matter may proceed in the district court.[6] *Cf. id.* Thus, in this dispute, we must review whether the district court arbitrarily or capriciously abused its discretion when it concluded that the underlying claims in the amended complaint were not subject to NRED mediation or arbitration under NRS 38.310(1).

---

[6]In this regard, NRS 116.3116(2) gives a specified portion of the association's lien priority over NRS 116.3116(2)(b) security interests. If no challenge is brought to the association's budget or assessments or the validity or amount of its lien, then tabulating the statutorily mandated superpriority amount, or determining the statutory effect of the various lien priorities subsequent to a foreclosure, would generally not involve interpreting the CC&Rs.

*The second amended complaint included claims that are premised on NRS 116.3116(2) and, thus, involve the interpretation of the CC&Rs*

Here, the second amended complaint includes the following causes of action: (1) declaratory relief concerning Southern Highlands' liens under NRS Chapter 116, (2) "[b]reach of NRS 116.3116(2)," (3) negligence per se, (4) injunctive relief, (5) negligent misrepresentation, and (6) conversion. In addition, it included allegations that Southern Highlands made "excessive demands . . . for claimed assessment[s]" and "false demands, improper liens and improper collection and retention of assessments," the result of which was the collection of lien amounts that exceeded the amounts permitted by NRS 116.3116. These allegations were incorporated into each claim. Although Prem and the remaining real parties in interest assert in their answer to the writ petition that their primary contention questions whether an association may assess more than the NRS 116.3116(2) superpriority lien amount after a first deed of trust on the property has been foreclosed, it appears that their second amended complaint contains additional assertions about the validity and amount of the assessments.

For example, the requested declarations concerning the validity and amount of the "claimed liens" and Southern Highlands' budget involve interpreting the CC&Rs, subjecting them to NRS 38.310's mediation or arbitration requirement. The requested declarations which only concern statutes and other authorities, however, are not subject to NRS 38.310's mediation and arbitration requirement.[7]

---

[7]Our recent opinion in *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. ___, 334 P.3d 408 (2014), addresses some of the issues relating to these requests for declaratory relief.

The remaining claims seek damages or relief relating to alleged "Unlawful Lien Amounts" or Southern Highlands' "false" or "improper" demands and receipt thereof, which purportedly violated NRS 116.3116(2). These claims not only dispute superpriority amounts and whether the remaining amounts have been foreclosed, but they also attack the validity of the assessments, collection fees, and other charges forming the basis of Southern Highlands' liens. These claims thus involve a determination of what the proper lien amounts were. Since lien amounts may be affected by the CC&Rs, NRS 38.310 requires these claims to be mediated or arbitrated before they are brought in district court.

Accordingly, with the exception of the declaratory relief claims that concerned authorities beyond the CC&Rs and their relationship to Southern Highlands' liens, the causes of action in the second amended complaint involve the interpretation of Southern Highlands' CC&Rs. Such claims are within NRS 38.310's arbitration or mediation requirement. Thus, inasmuch as these claims were brought on behalf of parties who did not submit them to an arbitrator or mediator, unless an exception applies, NRS 38.310 precludes the district court's consideration of these claims as they pertain to those parties, and these claims must be dismissed.

*NRS 38.310 was violated*

Having concluded that NRS 38.310 bars various claims in the second amended complaint if they are unmediated and unarbitrated, we now turn to Prem and the remaining real parties in interest's contention that they have fulfilled or are excused from fulfilling NRS 38.310's requirement because (1) Prem submitted all of the claims on behalf of itself and the class to an arbitrator, (2) Prem vicariously exhausted the class members' duty to arbitrate or mediate their claims pursuant to NRS

38.310, and (3) administrative exhaustion of the class members' claims was futile. We disagree.

### *Prem did not actually submit the class's claims*

The contention that the plaintiffs other than Prem, including the class, actually submitted their claims for arbitration because Prem attempted to present class claims to the arbitrator is premised on a loose and unconventional construction of the term "submit." The term "submit" means "[t]o end the presentation of further evidence in (a case) and tender a legal position for decision." *Black's Law Dictionary* 1466 (8th ed. 2004). Thus, the term "submitted," as it appears in NRS 38.310, requires a party to do more than file a claim with an arbitrator or mediator. It requires a party to *present* its claim to the arbitrator or meditator for a resolution.

Here, the record shows that when Prem attempted to bring claims on behalf of others in a class by means of a motion for class certification, the arbitrator denied the motion and refused to rule on the merits of the claims as they pertained to parties other than Prem. Therefore, the claims as they related to parties other than Prem were not submitted to the arbitrator and the arbitration only concerned the claims as they were submitted on behalf of Prem. Thus, when Prem submitted its claims for resolution by the arbitrator, it did not fulfill NRS 38.310's requirement on behalf of others.

### *Prem did not vicariously exhaust the remaining real parties in interest's or the class's claims*

The second argument is that Prem, by arbitrating its own claims, vicariously fulfilled the remaining real parties in interest's and the class members' duty to mediate or arbitrate their claims. To support this contention, Prem and the remaining real parties in interest proffer cases

 

which concern two circumstances in which vicarious exhaustion can occur. However, neither circumstance is present here.

Outside of circumstances that authorize vicarious exhaustion, individualized exhaustion of administrative remedies is generally required. *See Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 794 (Fed. Cir. 2009) (holding that except in limited circumstances "the [United States] Supreme Court and the lower courts have held that a party that has not exhausted administrative remedies is not eligible to be a class member"). In addition, vicarious exhaustion is not allowed when a statute requires individual parties to exhaust administrative remedies. *See U.S. Xpress, Inc. v. N.M. Taxation & Revenue Dep't*, 136 P.3d 999, 1003 (N.M. 2006) (refusing to allow vicarious exhaustion under a statute whose plain meaning required individual plaintiffs to exhaust administrative remedies); *see also Pourier v. S.D. Dep't of Revenue & Regulation*, 778 N.W.2d 602, 605-06 (S.D. 2010) (holding that a statute requiring an individual taxpayer seeking relief to complete administrative remedies precludes the application of vicarious exhaustion).

The first circumstance that Prem and the remaining real parties in interest identify is when a party shares "a community of interest" with a party who has exhausted its administrative remedies. *Leff v. City of Monterey Park*, 267 Cal. Rptr. 343, 348 (Ct. App. 1990) (internal quotations omitted). California appellate courts have applied the "community of interest" standard when the parties challenge an agency's decision and when the parties' interests on the disputed issue are identical. *Friends of Mammoth v. Bd. of Supervisors*, 502 P.2d 1049, 1062-63 (Cal. 1972) (allowing vicarious exhaustion in the context of a challenge to the grant of a land use permit), *disapproved of on other grounds by*

*Kowis v. Howard*, 838 P.2d 250, 254 (Cal. 1992); *see Tarkington v. Cal. Unemployment Ins. Appeals Bd.*, 92 Cal. Rptr. 3d 131, 143 (Ct. App. 2009) (allowing vicarious exhaustion for union members in a dispute about whether they were eligible for unemployment benefits during a labor lockout); *Leff*, 267 Cal. Rptr. at 347-48 (allowing vicarious exhaustion in the context of a challenge to the grant of a land use permit).

The second circumstance is when a statute contemplates post-administrative-procedure class actions and thus excuses class members from pursuing administrative remedies. For example, Title VII of the Civil Rights Act of 1964 and the Washington State Tort Claims Act authorize vicarious exhaustion of administrative remedies. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n.8 (1975) (holding that the Civil Rights Act of 1964's legislative history demonstrates an intent to allow vicarious exhaustion); *Foster v. Gueory*, 655 F.2d 1319, 1323 (D.C. Cir. 1981) (allowing vicarious exhaustion in a claim brought pursuant to the Civil Rights Act of 1964); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498-99 (5th Cir. 1968) (allowing the same); *Oda v. State*, 44 P.3d 8, 12 (Wash. Ct. App. 2002) (holding that the Washington State Tort Claims Act's administrative notice requirement allows for class action claims to be brought on behalf of parties who did not exhaust administrative remedies). Thus, vicarious exhaustion may occur if the parties' interests with regard to the challenged issue are identical or if otherwise authorized by statute.

Because of NRS 38.310's plain language, neither circumstance is present here. As we explained above, NRS 38.310(1) prohibits the commencement of any "civil action based upon a claim relating to . . . [t]he interpretation, application or enforcement of any [CC&Rs]" if the claim is

not mediated or arbitrated. NRS 38.310(1) (2009) (amended 2013). Furthermore, this statute states that "[a] court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." NRS 38.310(2) (2009) (amended 2013). In a statute, ""shall" is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature."' *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. ___, ___, 255 P.3d 1275, 1279 (2011) (quoting *State of Nev. Emps. Ass'n v. Daines*, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992)).

"NRS 38.310 expresses Nevada's public policy favoring arbitration of disputes involving the interpretation and enforcement of CC&Rs." *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 299, 183 P.3d 895, 902 (2008). Therefore, this statute's use of the term "shall" establishes a mandatory requirement that each CC&R-based claim be mediated or arbitrated and prevents district courts from considering an unmediated and unarbitrated CC&R-based claim.[8] Because it does not authorize any exception to its mediation or arbitration requirement, NRS 38.310's language precludes the theories of vicarious exhaustion proffered

---

[8]Though the dissent identifies a potentially meritorious policy issue relating to the efficiency and practicality of requiring each member of a potential class to arbitrate its CC&R-based claims before joining a class-action lawsuit, we cannot interpret NRS 38.310 to adopt the dissent's preferred policy because such a holding would require a deviation from NRS 38.310's plain meaning. *See Williams v. United Parcel Servs.*, 129 Nev. ___, ___, 302 P.3d 1144, 1148 (2013) (refusing to deviate from the plain meaning of a statute and rejecting arguments that would require the court to read additional language into the statute); *see also Diamond v. Swick*, 117 Nev. 671, 677, 28 P.3d 1087, 1090 (2001) (observing that "[this court's] business does not include filling in alleged legislative omissions based on conjecture as to what the legislature would or should have done" (internal quotations omitted)).

by Prem and the remaining real parties in interest. Therefore, Prem's completion of arbitration does not vicariously apply to the class's claims. As a result, the remaining real parties in interest and class members who did not submit their claims for mediation or arbitration did not comply with NRS 38.310. Thus, the district court erred by not dismissing the claims brought by and on behalf of those who did not fulfill NRS 38.310's mediation or arbitration requirement.

*Administrative exhaustion of the remaining real parties in interest's or the class's claims was not futile*

The third argument is that the remaining real parties in interest's and the class members' claims are excused from NRS 38.310's administrative exhaustion requirement because administrative adjudication of their claims would be futile. Prem and the remaining real parties in interest contend that arbitration is futile because an arbitrator declined to hear their class claims on the purported grounds that he lacked jurisdiction. They argue that NRED arbitration is inadequate because there are not enough arbitrators to resolve the class members' claims quickly enough to allow them to participate in a class action.

When an attempt to exhaust administrative remedies would be futile or the administrative process is inadequate, a party may be excused from a requirement to exhaust an administrative remedy. *Malecon Tobacco, LLC v. State ex rel. Dep't of Taxation*, 118 Nev. 837, 839, 59 P.3d 474, 476 (2002) (holding that administrative exhaustion is not required when it is futile); *see also Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) (holding that administrative exhaustion may be excused if "the agency cannot provide effective relief"). Though Prem and the remaining real parties in interest treat them as a single concept, futility and inadequacy are separate exceptions to the administrative exhaustion

requirement. *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986). Futility occurs when "the agency will almost certainly deny any relief either because it has a preconceived position on, or lacks jurisdiction over, the matter." *Id.* Inadequacy occurs when "the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong." *Id.*

NRCP 23 provides a right for parties to pursue claims in district court as a class. NRCP 23(a)-(b). This right "is a procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat'l Bank of Jackson, Miss. v. Roper*, 445 U.S. 326, 332 (1980) (holding that the analogous FRCP 23 does not establish a substantive claim or right); *see also Vanguard Piping Sys., Inc. v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 309 P.3d 1017, 1020 (2013) (stating that "federal cases interpreting [an analogous Federal Rule of Civil Procedure] are strong persuasive authority") (internal quotations omitted)). Because class actions are a procedural device and because a plaintiff has discretion about whether to use this device, class actions do not affect jurisdiction. *See Vaile v. Eighth Judicial Dist. Court*, 118 Nev. 262, 275, 44 P.3d 506, 515 (2002) (holding that "[p]arties may not confer jurisdiction upon the court by their consent when jurisdiction does not otherwise exist"). Thus, a party's decision to use or forego this procedural right does not change a court's subject matter jurisdiction over its claim.

Since a party's use of a procedural device does not alter a court's subject matter jurisdiction, Prem's attempt to submit claims as a class action does not affect an NRED arbitrator's ability to hear the individual claims. Thus, the arbitrator's order disclaiming jurisdiction in this case does not actually reflect a lack of jurisdiction or establish futility

for two reasons. First, the arbitrator incorrectly relied on NRS 38.255(3) to conclude that he may not hear class claims. Because this statute governs court-annexed arbitration and not NRED arbitration, *see* NRS 38.250(1), the rule does not govern an NRED arbitrator's ability to hear the class claims. An NRED arbitrator may still hear each class members' claims on an individual basis. Second, a statute or administrative rule preventing the use of class actions only limits the procedure and not the substance of the claims brought before the arbitrator. *See Roper*, 445 U.S. at 332. Therefore, a procedural bar to the use of class action claims does not change the subject matter jurisdiction of an arbitrator.

Similarly, because a class action is a procedural device that is ancillary to substantive claims, it is not a type of claim or relief. *See id.* Therefore, any limitation on the use of a class action would not prevent consideration of a claim that is properly brought or relief based on the claim.

An NRED arbitrator has authority to adjudicate claims relating to the "interpretation, application or enforcement of any [CC&Rs]." NRS 38.310(1) (2009) (amended 2013). Therefore, an NRED arbitrator is authorized to hear and to grant relief based on the remaining real parties in interest's claims and the class members' claims which involve the interpretation of CC&Rs. The fact that the procedural limits on arbitration may prevent the litigants from arbitrating as a class does not deprive the arbitrator of jurisdiction or preclude the arbitrator from granting the requested relief. As a result, administrative exhaustion is not futile and the administrative process is not inadequate because NRED arbitrators can resolve the claims brought by the remaining real parties in interest and the claims brought on behalf of the class members.

*Conclusion*

Accordingly, we grant in part and deny in part Southern Highlands' petition and deny Prem's petition. We direct the clerk of this court to issue a writ of mandamus that instructs the district court to (1) vacate its order denying Southern Highlands' motion to dismiss the claims in the second amended complaint; (2) determine who among the parties submitted their claims to an arbitrator or meditator under NRS 38.310; and (3) dismiss the claims identified herein that are brought by parties who have not submitted their claims to arbitration under NRS 38.310, without prejudice to the ability of those parties to submit their claims to arbitration before bringing the claim again or to file an amended complaint that does not challenge the validity or amount of Southern Highlands' liens or the monthly assessment derived from its periodic budget.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Susan Scann, District Judge
Adams Law Group
Brownstein Hyatt Farber Schreck, LLP/Las Vegas
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

HARDESTY, J., with whom CHERRY, J., agrees, dissenting:

I would allow the class action to proceed, as Prem, by arbitrating its claim, has vicariously exhausted the remaining real parties in interest's and putative class members' arbitration or mediation remedies prerequisite to filing a civil action. In making this determination, I disagree with the majority's characterization of the vicarious exhaustion doctrine and their conclusion that NRS 38.310 precludes any application of that doctrine.

The exhaustion doctrine provides agencies with an opportunity to defend or correct their actions, discuss legal issues with claimants, and otherwise attempt to settle controversies out of court. *Mesagate Homeowners' Ass'n v. City of Fernley*, 124 Nev. 1092, 1099, 194 P.3d 1248, 1252-53 (2008). But there are circumstances where this policy is not implicated and thus need not be a barrier to court access. For example, in multi-party litigation or class actions where all claims are so similar that a decision on any one of them can be imputed to all, there is no need for each plaintiff to separately exhaust remedies or for the same legal question to be repeatedly brought and decided. In such situations, courts have repeatedly ruled that one plaintiff may exhaust administrative remedies on behalf of other plaintiffs. *See, e.g., Foster v. Gueory*, 655 F.2d 1319, 1322-23 (D.C. Cir. 1981); *Phillips v. Klassen*, 502 F.2d 362, 369 (D.C. Cir. 1974); *Friends of Mammoth v. Bd. of Supervisors*, 502 P.2d 1049, 1062-63 (Cal. 1972), *disapproved of on other grounds by Kowis v. Howard*, 838 P.2d 250 (Cal. 1992); *Tarkington v. Cal. Unemployment Ins. Appeals Bd.*, 92 Cal. Rptr. 3d 131, 143 (Ct. App. 2009); *Leff v. City of Monterey Park*, 267 Cal. Rptr. 343, 348 (Ct. App. 1990).

Moreover, where all similarly situated plaintiffs have claims that would generate the same discussion and the agency has already utilized its opportunity to address and resolve the issue out of court, it would be inefficient to require all plaintiffs to exhaust their administrative remedies before proceeding to the courts. *Tarkington*, 92 Cal. Rptr. 3d at 143; *Local 186, International Pulp, Sulphite and Paper Mill Workers v. Minn. Mining & Mfg. Co.*, 304 F. Supp. 1284, 1289 (N.D. Ind. 1969). Here, where the real parties in interest, putative class members, and Prem share the same legal question, applying the vicarious exhaustion doctrine would speed efficient litigation without depriving Southern Highlands of its opportunity to settle the legal questions out of court as it has already taken and discarded that opportunity.

Moreover, this result would not run afoul of NRS 38.310. Southern Highlands argues, and the majority agrees, that this statute unambiguously requires each class member to exhaust his or her administrative remedies as a prerequisite to participating in a class action. On this point, law from other jurisdictions is instructive in illustrating that such is not the case.

In federal courts, vicarious exhaustion is generally applied in class action situations unless the requirement at issue is jurisdictional. *Compare Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 704-05 (D.C. Cir. 2009), *with Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498-99 (5th Cir. 1968). In *Blackmon-Malloy*, the court held that if a requirement is jurisdictional each plaintiff must fulfill the requirement prior to bringing civil suit; otherwise, the court is without subject matter jurisdiction over the case. 575 F.3d at 704-05. However, the *Blackmon-Malloy* court and other federal courts have repeatedly held that for a

requirement to be jurisdictional such intent must be clearly expressed through strong language within the statute itself, and that absent such language courts should presume the requirement is not jurisdictional. *Id.*; *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006); *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 148-50 (D.C. Cir. 2011); *Solis v. Communications Workers*, 766 F. Supp. 2d 84, 97 (D.C. Cir. 2011). In *Blackmon-Malloy*, for example, the statute under review, which was held to be jurisdictional, was titled "[j]urisdiction" and expressly stated that the district court only had jurisdiction if the employee had first completed counseling in accordance with the statute. 575 F.3d at 705.

Although many courts at the state level have not thoroughly addressed the question of whether administrative remedies prerequisite to a civil action are jurisdictional in nature, some jurisdictions have analyzed the language of a particular state statute in determining whether a statutory requirement applies to all plaintiffs. In *Arizona Department of Revenue v. Dougherty*, the Arizona Supreme Court held that where the tax code required that "each claim for refund" meet certain prerequisites, but did not specifically require each taxpayer in a class action to complete the requirements, vicarious exhaustion was permissible so long as a class representative had met the requirements. 29 P.3d 862, 866-67 (Ariz. 2001) (emphasis omitted) (internal quotations omitted). Conversely, in *U.S. Xpress, Inc. v. New Mexico Taxation & Revenue Department*, the statute at issue expressly mandated that "the taxpayer" take certain steps prerequisite to litigating a claim, and therefore, the New Mexico Supreme Court held that vicarious exhaustion of the requirement was not possible as the statute expressly required each class member to meet the requirements. 136 P.3d 999, 1002-03 (N.M. 2006) (internal quotations

omitted). The Supreme Court of South Dakota likewise held that vicarious exhaustion was impermissible where the statute expressly required each "taxpayer seeking recovery" to follow procedure. *Pourier v. S.D. Dep't of Revenue and Regulation*, 778 N.W.2d 602, 605 (S.D. 2010) (emphasis omitted) (internal quotations omitted). While this area of law remains unsettled, these cases nevertheless provide a framework for determining this question.

Here, the issue is whether each real party in interest and each putative class member must fulfill the requirements of NRS 38.310 before the class action may proceed. NRS 38.310 is titled "Limitations on commencement of certain civil actions," and states:

> 1. No civil action based upon a claim relating to:
>
> (a) The interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property or any bylaws, rules or regulations adopted by an association; or
>
> (b) The procedures used for increasing, decreasing or imposing additional assessments upon residential property,
>
> may be commenced in any court in this State unless the action has been submitted to mediation or, if the parties agree, has been referred to a program pursuant to the provisions of NRS 38.300 to 38.360, inclusive, and, if the civil action concerns real estate within a planned community subject to the provisions of chapter 116 of NRS or real estate within a condominium hotel subject to the provisions of chapter 116B of NRS, all administrative procedures specified in any covenants, conditions or restrictions applicable to the property or in any bylaws, rules and regulations of an association have been exhausted.

2. A court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1.

The statute expressly precludes "a *claim*" from being brought "unless the *action*" was first submitted to alternative dispute resolution and, if the action implicates NRS Chapter 116, administrative procedures have been exhausted. NRS 38.310(1) (emphasis added). Neither in the title nor in the text does the statute state that such actions are required before the court may have jurisdiction or that the requirements are jurisdictional in nature. Moreover, the statute never refers to the person(s) bringing the action, but instead refers to requirements that must be satisfied as to "[the] claim" or "the action" before it may proceed to court. Thus, on its face, the statute does not require that each plaintiff and class member exhaust his or her administrative remedies before bringing a class action. Rather, a fair reading of the statute suggests that so long as administrative remedies have been exhausted as to that claim, the court may hear the case.

Furthermore, NRS 116.4117(1), a provision referenced by NRS 38.310(1), states that "any person *or class of persons* suffering actual damages . . . may bring a civil action for damages or other appropriate relief," subject to NRS 38.310. (Emphasis added.) This language seems to contemplate class actions, and, unlike NRS 38.310, refers to a "person or class of persons" while NRS 38.310 refers only to a "claim" or "action." This further suggests that the Legislature did not intend NRS 38.310's requirements to extend to each class member and that vicarious exhaustion by a class representative is possible, as NRS 116.4117(1) both contemplates class actions and implies that the Legislature would have used more specific language to impart NRS 33.310's requirement on

individual class members had it wished to do so. Because the majority's reading of NRS 30.310 undermines if not eliminates any realistic possibility of a class action, that holding is contrary to NRS 116.4117(1). Given that statutes should be construed as a whole and in harmony with one another, the majority's conclusions also run counter to well-established legal canon. *See Canarelli v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 265 P.3d 673, 677 (2011); *Buckwalter v. Eighth Judicial Dist. Court*, 126 Nev. 200, 202, 234 P.3d 920, 922 (2010); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167-69, 180-82 (2012).

Here, Prem brought the claim on behalf of itself and all class members. Prem attempted to submit the class action to arbitration and, when that failed, Prem individually proceeded through arbitration and then brought the class action to court. Given that Prem's claims are representative of the legal questions common to the class as a whole and that Prem exhausted its administrative remedies, vicarious exhaustion should apply to allow the class action to proceed.[1] Moreover, allowing such actions to proceed presents little danger of claims circumventing the administrative process because, prior to certifying the class, the court must evaluate the commonality and typicality of the claims of the individual class members so that only those members whose claims mirror

---

[1]There may be some hesitancy to apply the doctrine of vicarious exhaustion as the facts of this case do not fall squarely under administrative law. The parties do not question whether this case is truly administrative in nature, and I do not consider whether the doctrine of vicarious exhaustion is inapplicable to cases arguably falling outside of administrative law.

the claims of the class representative(s) will fall within the class. To hold otherwise only serves, as a practical matter, to preclude the possibility of a class action lawsuit against homeowners' associations and would therefore increase litigation and impede—if not prohibit—access to the courts. Such a result turns the policy behind the exhaustion of remedies doctrine on its head. It is cases such as this, where a large class of plaintiffs share a common interest in resolving a narrow legal question, that the vicarious exhaustion doctrine would seem to best serve public policy and judicial economy.

Accordingly, I dissent.

_____, J.
Hardesty

I concur:

_____, J.
Cherry